You're all set, Justice. All right. The People v. Zekiah Anthony, 22-1648. As you know, you've got Justice Aurelia Puchinsky, Justice Terry Levin, and Justice James Fitzgerald Smith before you. The way we operate is, we let the appellant go first, and he's given approximately 15 minutes, as long as he stays on the topic. And then we ask questions. And the same is true for the state, or in this case, it looks like it's a private attorney, the response. And then at the end, you've got a rebuttal period, usually approximately three to five minutes. With that in mind, you may proceed. Is Andrea Salone, are you related to retired Judge Salone? Yes, Judge. Okay, I just say hi to him. We were good friends. Okay, proceed. Thank you. Can you all hear me? Yes. Okay, great. Thank you. So good afternoon, and good afternoon, counsel. My name is Ian Jackson. I'm from the Office of the State Appellate Defender. And I'm here on behalf of the defendant appellant, Hezekiah Anthony. Mr. Anthony was convicted of first-degree murder, and he was sentenced to 21 years in prison. And as you know, this appeal involves both the challenge to the sufficiency of the identification evidence, and also a sentencing issue about how the trial court in two ways consider improper evidence in aggravation. My intention is to start by talking a little bit about the insufficiency of the state's identification evidence, and then turn to the sentencing issue. But I'm also happy to skip around as well. So as for reasonable doubt, this court should reverse outright Mr. Anthony's conviction for to sustain his guilt beyond a reasonable doubt. Central here is that there's no physical evidence tying Mr. Anthony to the offense. Yes, he was detained within minutes on suspicion of having punched and stomped on Dora Nix Corbin to the point of bleeding. Yet the state presented no evidence that Anthony had any abrasions of any kind on his fists or hands. There was no evidence of any blood or hair on his shoes or pants or any other part of him. And again, this is despite evidence that that Nix Corbin bled. So connecting Anthony to the offense then rests on the, frankly, the frailties of human perception and the particularly unreliable testimony of Norwood, on whom Sergeant Kimball relied when deciding who to pursue and arrest. So focusing on Norwood, her testimony about identity was scant, and she was overall inconsistent and unreliable. She was across the street smoking, talking with this individual, Chris Williams, and there were also other people out and about on the street. She did not hear yelling or commotion. She did not see the incident start, and it was Chris, actually, directed her attention across the street. Now, Norwood says she saw only a leg stomping on Nix Corbin and that she did not see the perpetrator's face because a parked pickup truck obstructed her view. She ran across the street and did become closer to the person, but that person was walking away, and she continued to provide only a scant description. His leg, white t-shirt and khakis, and his back. She never saw his face, and she did not notice any red shoes with multicolored laces, which the property room officer testified was what Mr. Anthony was arrested wearing. And again, that's not seeing the shoes, despite Miss Norwood only seeing the leg at first. Additionally, Miss Norwood's attention was focused primarily on Nix Corbin. She knew her, and she testified that she was screaming and crying and shaking Nix Corbin, trying to rouse her. And then in these next few minutes, she waved down Sergeant Kimball and told him that the person had gone around the corner, again only providing this scant clothing description. Moreover, there's no testimony, no evidence of a show-up identification being done here, and Norwood acknowledged that she did not make an identification when she was showed a photographic array shortly after the incident. And then there's these contradictions that come out in her testimony, too. Like at this trial, she said she had seen the individual in the building before, but previously, she had testified that she'd actually never seen him before. Pardon me for the interruption, but you say this trial, that trial, there was another trial? There was a previous trial in which the state prosecuted Mr. Anthony for the aggravated battery involved in the same incident. And he was found guilty, right? That's correct. What about collateral establishment? Right. So why are you wasting your time on identification when earlier he was identified clearly? And secondly, you raise a question about did she see him or not see him? She may not have remembered seeing him the first time, but she had many times in between the first and second trial to identify him and see him, which she said she did. Just facts you're avoiding. And it was affirmed on appeal. So if I may take the question in order. So my point is, why don't you just go to the real issue? And that's the issue of the sentencing. The other one is a dead horse. I agree. So, okay. Well, I do want to address this idea of estoppel at a minimum. So if it's all right, can I address Justice Lavin's question first? Okay. Thank you. So this court doesn't need to decide anything about that. That should have no bearing here. Under the constitution, criminal defendant, of course, in any prosecution, including Mr. Anthony, is cloaked with the presumption of innocence. And it is the state's burden to prove every element of every offense in every trial beyond a reasonable doubt. And that is no different here. This is... So you want us to come up with a not identifying him in a second trial. So then you've got another conflict, which is ridiculous. Well, I disagree that it's ridiculous, Your Honor. This is a different trial. Different evidence is presented. It's the same evidence. I went back and looked. You're wasting our time. Move on. Okay. If Your Honors don't have any further questions about reasonable doubt, I will turn to the sentencing issue. Thank you. Go ahead. Thank you. So overall, the court here considered improper evidence when fashioning Mr. Anthony's above minimum sentence. And there's two different errors here of the same sort, and each provide independent or collective grounds for relief. With this sort of issue, there's basically three elements. There's was this type of evidence improper? Did the court consider it? And can we determine that any consideration of it was ultimately insignificant or had no possible effect on the sentence? So I'm going to talk first about the void Aguilar convictions, where there's a little more agreement between the parties. There are three void Aguilar convictions in Mr. Anthony's background. The state, as I read it, agrees that these are void and that they should be vacated. Okay. And so then the question becomes, okay, did the court consider them? And the record shows, yes, the court considered them. Okay. Here's the bottom line here. There's an agreement between the parties that have agreed that the judges here that the court took into consideration on the record matters that he should not have considered in coming up with the sentence. But it came up with a sentence of only one year more than the minimum. So what you're asking for is for us to send this back on that basis for one less year. Is that correct? That's correct, Your Honor. And I can turn to that aspect of it right now. Okay, great. So how do we know? The standard is, can we say that the way accorded this improper evidence was so insignificant that it didn't affect the sentence? These three void convictions make up the bulk of Mr. Anthony's felony background. And courts have reversed for less. I noted in the briefs, people be Cross, people be Alexander, in which the court reversed in similar circumstances, but with a smaller percentage of the background being void. And nothing the trial court said indicates that its consideration of these matters in the PSI in the criminal background was insignificant or that the sentence was ultimately based on other considerations and not at least in part on the criminal history that was assessed and analyzed. And to the contrary, the court was explicit again that it considered it. And so we kind of can look at the same thing for a couple of different purposes here. The court said, I've considered all that, right? I've considered the breadth and width of your prior record and I've considered all that. And then we also have the state arguing it in aggravation, which I know the state disputes that characterization of what they were doing, but they certainly weren't asking the court to not consider it or to disregard it. They were highlighting it. So really for that collection of reasons, starting with the fact that this is an above minimum sentence and the court did not say that it was, again, considering, but really disregarding the criminal history. And also because the court was not relying principally on some other consideration. We can come to the conclusion that we at least can't say that the consideration was so insignificant that it did not affect the sentence. And I think it's important to understand too that this is a legal error, right? Not an abuse of discretion issue. It doesn't matter whether a judge could impose. It doesn't matter that another judge or that the same judge on the same sentence, because this is a procedure process error. And in order to remove the dark mark of that error, there should be a new sentencing hearing. I don't have a problem with the new sentencing hearing, but you're talking about a different judge or something. Judge Flax has retired. Yes, I'm aware of that. I didn't in the briefs ask for a remand to a different judge. There wouldn't be ground as far as I can see for that. It just so happens that in reality, this, I guess, would not go back to Judge Claps, but probably whoever took over his call. With these convictions then, excuse me, the void convictions, I want to touch a little bit on my sort of additional request of this court, right? To not only, for purposes of this appeal, vacate the void convictions, but to take further action to sort of actually vacate the convictions in the underlying cases. And, you know, my position here is really the same as what I set forth in the briefs. It's relying on in regi and Supreme Court's language that anytime this sort of issue is brought before any court, quote, the court has an independent duty to vacate the void judgment. And my understanding is that, you know, the appellate court in these situations will say, we vacate this conviction or these void convictions. But the problem comes in where nothing actually happens with the underlying files, the underlying cases. And so despite the court's best intentions with it vacating, it doesn't, the vacating is not actually fully accomplished. And so in order to fulfill, to completely fulfill the obligation that the Supreme Court sets upon all courts in the state, I think the proper course is for this court to direct the circuit court to enter vacator orders in the additional cases in order to fully vacate the convictions. In the three void convictions, right? Okay. All right. Yeah. I don't think you'll have any problems with those on that. Okay. Do your honors have questions about the, you know, consideration of the underlying aggravated battery? I wasn't clear whether... It's under the law, the judge should not have considered that when he was sentencing him. So we recognize that. But the bottom line here is that what you're looking for is that you want those three void convictions vacated and you want him to go back in front of the judge to be resentenced without taking those things into account. And he'll wind up with the minimum sentence, which is going to be one year less than he has already been given. After beating this woman into a corner, knocking out her glass eye and leading to a death. I just want to make sure I understand. When it goes back, whether the judge class was still, you know, is still in office or what or not, whether it goes to a new judge, whether or not, there's a range. So you're willing to take the risk that this new judge, on resentencing, could resentence to more than the 20-year minimum. There's nothing that says this judge has to stick to the 20-year minimum. It's 20 to 60, as I read it. Well, there's a statute, there's at least one statute. The risk would be based on if Mr. Anthony has engaged in aggravating conduct during the evidence at the sentencing hearing that he has done so, a judge at a new sentencing hearing would not have the authority to impose a greater sentence than 21 years. But still could impose 21 years? Yes. Okay. So I guess it was just a follow-up to Justice Lavin's question. Sure. Okay. Yes. Thank you very much, counsel. We'll hear from your opponent. Thank you, Your Honor. Your Honors. Andrea, you may go ahead. Thank you, ma'am. Please, the court assistant state's attorney, Andrea Salone, for the record on behalf of the people. When reviewed in the light most favorable to the people, defendant was proven beyond reasonable doubt of the murder of Ms. Dora Nix Corbin, where his identity was established by two eyewitnesses. And because Your Honors indicated that you are more interested in hearing about the secondary issue, I will focus on that in respect for your time. Yeah, we think there's no issue as to issue number one, but there is as to the sentencing issue. The trial court exercised appropriate discretion where the sentence defendant is one year above the minimum sentence after his sentencing hearing. We do agree, the state does agree, that the Pagliolari case should be vacated pursuant to NRENG. That's a non-issue. And so, because that's a non-issue, I think it really just boils down to the issue regarding the aggravated battery. Well, before I go there, with respect to the Aguilar convictions, the defendant is the one who proffered them during his mitigation. The record reflects that on page 398. The state never proffered them, and so for that to be deemed to be... Ms. Sullivan, can I just interrupt you for a minute? We're getting some feedback from someplace. Are you hearing that, Justice Levin? Yeah, I think somebody, other than the two, somebody in the background is speaking, other than myself. One of the clerks evidently has their phone on. Okay, all right. My stuff's not off, so... It has everyone muted, Justice. I don't know what that is. Okay, thank you. I'm sorry, I didn't mean to interrupt you. I hear it also, Justice Paczynski. Thank you. The three Aguilar convictions that the court heard, the only reason that the trial court heard these convictions is because the defendant himself proffered these in mitigation. And so, to offer them and then cry foul on appeal tends to amount to invited error, and I don't believe that that should be held against the trial court or that it affected the sentencing as the court is presumed to know and follow the law. You know, perhaps it's my microphone. I don't know. I just checked mine. We don't think it was mine, but... Okay. With respect to the aggravated battery facts that the court heard, the state offered that as they indicated to speak as to how violent the defendant was. I obviously don't need to go into how violent he was. I think that that's clear. However, there is no abuse of discretion in the court hearing that, where in this matter, the defendant received one year above the minimum, and most importantly, he was credited with eight years for the time he spent in custody on the aggravated battery of a senior citizen charge. So, the trial court could not have sua sponte vacated the aggravated battery to a senior. It wasn't asked for. He couldn't just on his own say, let me vacate that. As a preliminary matter, the defendant forfeited the issue because he didn't object that sentencing. Defendant on appeal indicates he did object by saying that these two charges should merge, but that's not an objection. That's a sentencing recommendation. And so, where the trial court just collapsed at the time could not just on his own vacate that aggravated battery because it wasn't requested. What he did was the second best thing he could do, which is to give the defendant credit for eight years, one month, time considered served, time actually served. And that makes all the difference because there is therefore no prejudice in this matter. There's no prejudice here. You can't say that the court gave it no weight because he mentioned really almost sort of reading out of the bench book that he considered factors in and his background. But as it's been discussed, he sentenced him to one year over the minimum with the credit for the eight years. So, in that way, functionally speaking, it was merged. Now, we can only look at what the law says the test is for this. And so, in our brief, we outlined in People versus Al-Khadi, the test that courts look at to make a determination as to if the consideration of an improper factor had a detrimental result. And the first prong of that test is if the trial court made dismissive comments with respect to the improper factor. And here, the record shows that he did not. There wasn't any, quote, unquote, mirroring of it where he's repeating back what those facts were. There's no, and because you did X, Y, Z to Ms. Dornick's Corbin, I'm going to give you no. In fact, there's no indication at all that he considered that in a way that was harmful or prejudicial to the defendant. And the second factor is whether or not the sentence was substantially less than the maximum. The sentencing range was from 20 years up till 60 years. So, 21 years is substantially less than the maximum of 60 years. In fact, that's exactly what the defendant himself asked for. In the record on page 400, the defendant asked for a sentence close to the minimum. And that's exactly what he received. If there are any questions about this issue further, I'd be happy to answer. If you would like me to perfect it. I think you've summed up the ironic nature of this appeal. Right. I just want to make sure our numbers are the same. So, he was sentenced to 21 years, but he got credit for the eighth day he served on the ad bat. So, he's really only since 13 years in prison. Yes, Judge. He was credited eight years, one month for the time that he received on the aggravated battery. And the court made special note that that's what he was going to make sure that he for a new hearing would be the answer. I think that the answer is to vacate the Aguilar convictions and to affirm the court's decision. Thank you very much. Thank you. Any further questions? No. Thank you both. May I speak in rebuttal? No, you're done. There is no rebuttals. For some reason, you've got your own idea how this should work, but that's not how it works. So, I may have been a little rough on you at the initial part, but we don't want to listen to stuff that we read in the briefs and repeat. It's just a waste of our time. So, thank you both for your presentation. Justice Smith. Justice Smith. Yes. With respect, I disagree. I believe that Mr. Jackson has an opportunity now for a very brief rebuttal. I will not allow a rebuttal. Justice Smith. We're done. We're done. It has been our tradition to allow. We don't allow rebuttals. We do allow rebuttals. You may add another panel. We do not. Justice Smith, with all due respect, I must tell you that I significantly disagree with you. The case is over. Darren, end the case. Aye, Justice. Thank you for your time. Thank you. Thank you.